The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Good morning. Please be seated. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a nine and give their attention. For the court is now sitting. God save the United States and this honorable court. Our fine clerk, I misunderstood what was going on. Now please be seated and good morning. All right, we're having here argument in our first case, number 134768, United States v. Valdovinos. Ms. Hester? May it please the court, Anne Hester representing Jose Valdovinos. The government doesn't dispute that the state court had no discretion to sentence Valdovinos to more than 12 months once it accepted his guilty plea. But it asked the court to calculate the maximum sentence for this conviction based on a double hypothetical, a defendant whose guilty plea was rejected and who nevertheless was found guilty without the plea agreement. Well, is that the relevant dividing line once the plea was accepted? I mean, up until that point, the judge had discretion, limited albeit, to reject the plea and walk away from it, but discretion nonetheless. He had discretion to reject the plea, but he did not have sentencing discretion at that point because there's no conviction at that point. Well, he might not have, but until the defendant actually appeared in court, he was much more than a hypothetical defendant because given his record and the offense level, he could in fact be sentenced to more than one year for that offense. But under Simmons, for statutes and guidelines with this wording, the important consideration is what he was actually convicted of. I think what you're asking us to do is go to a regime of actual sentences, and we've rejected that time and time again. No, it's different from the regime of actual sentences that the court has rejected again in Carr because at the time that the guilty plea is entered, the court has no sentencing discretion at that point. But again, I'm asking why is that the relevant line of demarcation? What's so magical about that? Because Valdovinos was never exposed to a sentence greater than 12 months for his conviction. Sure he was, up until, as you say, the judge accepted the agreement. Up until that time, this was more than a hypothetical situation for Valdovinos. He could in fact have been sentenced to a sentence of more than one year. But that presumes that he would have been found guilty, which is not a foreign conclusion. He might not have been found guilty. If the court had rejected his sentencing plea, he might have gone to trial. He was exposed to it. He was exposed to it. His conviction did not expose him to it. Instead of using this hypothetical approach that the government suggests, the court should follow the principles laid out in Simmons, Miller, and Carr, which require the court to calculate a maximum sentence based on the maximum punishment he actually faced for his conviction. He never actually faced more than 12 months' imprisonment for his conviction. In other words, what you're saying, I think I finally understand, not through any fault of your own, but what you're saying is every indicted defendant is exposed to a certain sentence. But unless and until a defendant is convicted, you can't really apply Simmons. That's correct. That's what you're saying. That's exactly what I'm saying. But both the Supreme Court case and Simmons are rooted in a statute and the statutory requirements, not the side deal that a prosecutor made with the defendant. Well, what makes this also a statutory requirement is North Carolina's requirement that when a prosecutor and a defendant agree to a specific sentence and the court then accepts the plea, that the court is bound by the plea. Yeah, but that's a big if the court doesn't accept the plea, not bound. But if the court doesn't accept the plea, then, again, there's no conviction. Did we make that distinction in any of the cases before this one? Well, this particular issue obviously has not been before the court before, so it wasn't taken into consideration in Simmons or Miller or Carr, but those cases do. But we didn't say, as Judge Davis intimated, that the actual conviction is the line of demarcation, did we? Well, yes. We said that we begin with the conviction. You begin with the judgment of conviction. Because the Supreme Court said you begin with the conviction, but that doesn't mean you don't. I don't read that as meaning that you take that in isolation. Well, I think that you have to begin by looking at what he was actually convicted of because of the language of the guideline and the language of the statute that says the felony is a conviction for a prior offense that's punishable by more than a year in prison. So I think that that statutory language is what requires the court to begin with the conviction rather than beginning with the offense. And, of course, there was a big discussion about that in Simmons over whether you look at the offense or the conviction, and the court came out on the side of you have to look at the conviction and what he actually faced in his conviction, not what the general offense provided for. And that's why the maximum under Simmons is the maximum that applies to your particular defendant rather than the maximum that might apply to somebody who was convicted of that offense, some hypothetical person who was convicted of that offense and you don't know what his characteristics are. So your point is a C plea is sort of sui generis here because you don't have a conviction until the C plea is accepted. And when the C plea is accepted, there can only be one sentence. Well, is Your Honor referring to the federal C plea? I'm using the term C plea to refer to what happened here in North Carolina. It's analogous. It's analogous. It is analogous, but there is a difference. And what's the difference? Well, the difference is, well, there's really three differences because, first of all, Rodriguez makes clear that the Simmons ruling can't apply to the federal sentencing scheme because federal law provides separate statutory maximums and then plus discretionary guidelines. But that's not the only reason because also, unlike North Carolina, federal maximums focus on the offense and not the offender. And federal law broadly categorizes the seriousness of prior offenses based on what the statutory maximum punishment is. In particular, if you look at 18 U.S.C. 3559A, that's where the statute assigns broad grade ABCD based on what the statutory maximum sentence is. So I don't necessarily think that if a ruling in Valdivino's favor would apply under federal law to the C plea. And I didn't mean to suggest that. I think perhaps you misunderstood and I wasn't clear. My point simply is that as under the federal system, in the North Carolina system, when there's an agreed-to disposition, the court has only two options, to accept the agreed-to disposition or to permit either the state or the defendant, if it doesn't want to accept the agreed-to disposition, to withdraw from the deal. Exactly. And so that's the same law under the federal C plea, what we call the C plea. Correct. So my point was simply that your argument rests on the notion that Simmons focuses on the fact of the conviction. Correct. And under a C plea type procedure, you never have a conviction, no matter what the exposure of the defendant might be, apart from the C plea,  Exactly. And once the court accepts the plea, what your argument is that de jure and de facto, you're right back to Simmons. That's correct. Because the court now has no discretion. Correct. Now the court can reject the plea. The deal is off. And now the defendant is simply another indicted defendant under North Carolina law. That's correct. And he can go to trial or he can reach a different plea. Correct. That's your argument. Correct. Now, by the way, you've said a couple of times car. Is that the North Carolina pronunciation of Kerr? Yes. So you're referring to K E R R. That's how we pronounce it. It's Carly. I suppose in Boston it would be car. Yeah. The same three key considerations the court relied on in Simmons also apply here and require this result. First, Simmons requires the court to begin its analysis with the North Carolina judgment of conviction. And if you look at the judgment of conviction here on the front page, it states that the court has accepted Valdivinas is guilty plea subject to the agreement on sentence. Can I ask you, can I ask you this leave Simmons aside for one moment because Simmons is based on territory and if the Supreme Court Simmons is in any way in conflict with the Supreme Court's decision in territory, we go with the Supreme Court, correct? Correct. Okay. So territory says we focus on the conviction because the question for federal sentencing purpose is whether the particular defendant was quote actually convicted of a crime that is itself punishable. That's the end of the quote by imprisonment exceeding one year. So doesn't the itself refer back to the crime? I think it does, but well, you can't hear itself is punishable by more than one year. Well, except you can't divorce that from looking at the North Carolina sentencing scheme that has a different sentence for mitigated, presumptive and aggravated. And what the parties here did in essence was stipulate to a sentence that happened to be in the mitigated range. And we know after car that that is the only way to guarantee a defendant that he's going to get a sentence in the mitigated range because otherwise the court still has discretion even if it finds mitigating factors outweigh the aggravating factors to sentence in the presumptive range. That leads me back to one of the three important principles in Simmons that also apply here. And that is the principle of federalism. In Simmons, the court stated that federalism requires the court to defer to the state prosecutor's decision not to pursue a felony sentence. And you say in your brief that there wasn't a, that this wasn't a felony, but in fact it was a felony. Well, it's not a lot of law. It's a felony, but there wasn't any decision by the prosecutor not to proceed with the felony. Well, it was because the prosecutor decided not to seek punishment greater than one years in prison, but that's not, doesn't decide whether this is a felony under North Carolina law. North Carolina has statute saying this is the felony.  It isn't limited to a term of more than one year. But under this provision, in order for it to be a felony under the guideline, it has to be punishable by more than one year. I thought your argument to us was the prosecutor here made a determination not to proceed and charge this man with a felony. And in fact, this North Carolina prosecutor didn't make that decision because under North Carolina law, this still is a felony. I thought you said not to seek a felony sentence. Yes, that's what I, if I didn't say that, that's what I meant. Well, sentence for a felony. Yes, this is felony sentence, right? It's not a felony sentence for terms for the guidelines to be sure. But the prosecutor looking at this is seeing it's a felony and sentencing. Well, for a felony, he's seeking a sentence less than one year. And that's the definition of a felony under federal law, but under North Carolina law. Well, that's true. But the definition that we're looking at is the federal definition of what qualified in your discussion of what the North Carolina prosecutor is doing. You're looking at North Carolina law. Well, but the question is, does the prosecutor think this is a, a, an, an offense that's deserving of punishment greater than one year? That's really the question saying whether he thinks it's a felony or not. Well, that's because your whole argument is that he made a reasoned decision that this wasn't a serious offense. And you've called it not a felon, but now we've established it was a felony under North Carolina law. But in fact, if that really was what the prosecutor was doing, he could have charged a different offense. That's what they do all the time in federal court, as you are well aware. Well, but under, you know, under the North Carolina sentencing statute, the prosecutor has the option of seeking a sentence in the mitigated range. And that's what he did. What all the only point I'm making is that it seemed to me in your briefs, and you were starting to say this in oral argument, that there was some thought process by the prosecutor that this wasn't a serious offense and therefore not charged as a felony. But then in fact, it was charged as a felony. It wasn't charged as, it could have been charged as a lesser offense. It wasn't. He agreed to a lesser sentence. That's all. Well, if I stated it that way, that is not what I meant. What I meant was punishable by more than one year. And probably I've just spent too much time with Simmons and, and used it in a shorthand fashion where what I really meant to say was the prosecutor did not think that it was worthy of punishment greater than one year. But that is what I mean to say. The three key considerations under Simmons that also apply here are first, of course, the judgment of conviction. And second, the procedural requirements that would have allowed a higher sentence in this case were not followed. There are procedural protections in place to guarantee a defendant that when he enters a plea of guilty, he's not going to be facing a sentence greater than he's agreed to. And if the judge decides that he's not going to adopt the sentence stated in the plea agreement, the judge has to give him an opportunity to get out of the plea agreement and plead not guilty and go to trial if he wants to. Those weren't followed here. So disregarding those procedures and calculating the maximum sentence would dismiss them as meaningless in the same way that disregarding the procedures for aggravating circumstances, excuse me, by considering a sentence aggravated when it wasn't would dismiss those as meaningless. That doesn't really work because it's not that we're ignoring aggravated circumstances or we're ignoring or we're trying to pin on this gentleman something that he did not do. We're looking at what he actually did do. His own offense level, his own criminal history and attribute to him the crime that he actually was convicted of. But that ignores the language in Miller and in Carr that states that you have to consider the sentence that the defendant actually faced for his conviction. And here Valdovinos never actually faced a sentence greater than 12 months imprisonment. Thank you very much. You have some time for rebuttal. May it please the court, Amy Ray for the United States. Your Honors, critical to this court's decision in Simmons was its holding that the North Carolina Structured Sentencing Act functions as a legislative mandate. It creates different aggravated or non-aggravated offenses based on the statute in the act itself. Nothing in North Carolina's Plea Procedure Act, which is in a separate section, serves as a legislative mandate in any respect other than once a judge accepts a guilty plea, the judge has to sentence within a certain range. But that statute creates no substantive sentencing range at all. The substantive sentencing ranges are found in the North Carolina Structured Sentencing Act. And those ranges provided for a sentence of more than one year if the defendant is convicted of a Class G felony as this defendant had been for trafficking in heroin. So Simmons doesn't admit of the possibility that a prosecutor and a defendant can reduce a statutory maximum. Well, it certainly didn't involve that. But there is certainly also language in Simmons, which we can all sit around and criticize now, and I'm going to be the first to do so, that we start with the conviction. Yes. And this man was actually convicted of a crime that was punishable, that he received a punishment of less than one year, right? He was convicted of a crime that is punishable by more than one year. And we do begin with the conviction. So was Simmons, right? At least in theory. Well, Simmons himself was convicted of a, I don't remember if it was a Class H1. But at the far end of the spectrum, in fact, was punishable by more than one year. Yes, Judge Diaz. But what this court recognized in Simmons is that the Structured Sentencing Act creates essentially at least 12 offenses for each class level. You remember telling me that was impossible to do. I did, Your Honor. And the court held that nevertheless. So I'm going to rely on that now. Because I remember arguing that it wasn't, that just couldn't possibly be correct. And I stand corrected. So, yes. But turning back to that recognition, there are at least 12, it depends on whether we consider mitigating another six, but let's say that Carr resolves that in favor of 12 classes of felony. So there would be some felonies under Class H that would rise to punishment of over a year. But Class G1 automatically would have under the Simmons analysis. And what the defendant is arguing here is that a prosecutor and a defendant, not a prosecutor can exercise discretion to charge a felony or not charge a felony. And that was the prosecutorial discretion that was at issue in Carachuri-Rosendo and in this court's decision in Simmons. But there is nothing in any of those decisions that suggests that a prosecutor and a defendant can reduce a statutory maximum by agreement after an offense has been charged that would be punishable by more than one year in prison. It's a question of what the legislative mandate is, what the statutory requirement is. And Rodriguez supports that by noting that even when the sentencing guidelines, the federal sentencing guidelines were mandatory, that did not mean that the top of the guideline range established the statutory maximum because there was a way to go over. So it is, the language of conviction is important, but so is the language of it's an offense. And Section 2L1.2 defines offense, felony as an offense that is punishable by more than one year. I take it that they say, okay, there is another, I know you sort of dismissed it out of hand. You say that other North Carolina statute really doesn't count here, but they say, okay, we rely on a different statute. It's not just, why doesn't, what's wrong with that argument? Well, what's wrong with it is that it doesn't, that statute doesn't, it's not a statutory sentencing scheme. It's not a statute that provides for substantive ranges as the one. Well, it certainly affects a sentence. I mean, you can label, you know, so if we made a list, if we were a senior in high school, we made a list of all the sentencing statutes that affect sentences in North Carolina, this would be one of them. Your Honor, I would respectfully disagree with that. I don't think that the statute itself affects a sentence. The statute itself allows the parties to come together and agree to a sentence, but it doesn't change. Nothing in that statute says you have to agree to X sentence or Y sentence. Does it affect in sort of a broad scale way? I guess I could concede to that, but it is so different from the sentencing schemes that the Supreme Court was reviewing in Carachuri-Rosendo or that this court was reviewing in Simmons that I don't think they can be put into the same basket and held as equal for purposes of whether an offense is punishable by more than one year in prison. The term legislative mandate, the only thing that's mandated in the plea procedure statute is that the court can't change it. But there's been no federal decision that suggests that an 11C1C plea reduces the statutory maximum. Ms. Wright, is there a way on the basis of the documents in the record to actually tell what his sentencing range would have been on a straight up plea or a guilty verdict? Absolutely, Your Honor. Where is that in the record? The base of the judgment, which is on page 62. Am I right about that? No. The state court judgments are on page 80, I apologize. Page 80. Yeah, I'm looking at page 80. Right. So in there you will see that he was convicted of a Class G felony. Right. And his prior record level was a one. Right. At that point, and this court describes this process in Simmons, we go to the statute itself to determine what the sentencing range is. Okay. So what's his sentencing range? His sentencing range was a maximum of 12 to 16 months. And where is that in the record? You have to actually apply the statute to that, but it's in the record because it says G1. Once we know it's a felony Class G. Well, what does it mean down at the bottom? Is that the stipulated sentence, the 10 to 12 months? Yes. I see. Yes. So the 12 to 16 is not, I won't find that in the record, but you say if you actually had to go through the calculation, that's what it would be. Your Honor, Judge Davis, not find the word 12, or the numbers 12 to 16, but you would find what this court described in Simmons and in Carr that is critical. You will find the class of felony, you'll find the prior record level. So does that mean that the judge in this case, the North Carolina sentencing judge, never actually did that calculation because she or he didn't have to, because it was a C plea? Well, Your Honor, I would respond with two ways. First of all, a judge in North Carolina wouldn't have to do the calculation because they have it in their heads. It's not that difficult. They would know it's a G1. But the more important, I guess, point of your question, did the court have to have anything to consider? No. Presumably the court considered that at the time the court decided to accept the plea. The court would have thought, okay, what am I agreeing to? What am I going to? So here's my follow-up hypothetical. Imagine, if you will, please, counterfactually, that his mitigated range actually would have been 10 to 12. Would your argument here be exactly the same or would it be different? It would be the same. His mitigated range actually would have been. When Your Honor asked me, I was speaking of the maximum. So the way the North Carolina statute works is you have a mitigated, you have a bottom and you have a top. Right. And it actually is a range on both levels. So what was his mitigated range? His mitigated range was 10 to, he faced a minimum of between 10 and 13 months. So the bottom of the mitigated range would have been 10 months. Okay. And the top of the maximum range was 16 months. But the top of the mitigated was still more than a year. The top of the mitigated was 13. Was 13. So I guess hypothetical again is, with the C plea, if you have somebody who's fully in the mitigated range, would your argument be the same here today? Yes, because the question isn't what a prosecutor and a defendant agree, that is the appropriate sentence. The question is whether the offense is punishable by it. Okay. So your argument, I understand, I think, based on Simmons and Kerr, or Carr, if you will, is that nothing the prosecutor does informs a Simmons analysis. Only if it's true. Other than charging a lesser offense. Precisely. So you just carve out entirely. And even a person who would otherwise have the benefit of the possibility of a mitigated range sentence squarely in the sweet spot of Simmons, if the lawyer screws up badly enough and enters into a C plea and thereby removes the discretion of the sentencing judge not to sentence in the presumptive range, that defendant is worse off for having entered into the C plea than he would have been had he just pledged straight up. Does that make sense to you? I think I disagree with the conclusion, Your Honor. To disagree with the conclusion, you have to disagree with one of the premises. I do, and the premise is that the premise, I think, and correct me if I'm misunderstanding Your Honor's question or hypothetical, but the premise was that somehow the range changes after charge based on what a lawyer does. No, that wasn't the premise at all. I'm hypothesizing a lawyer who doesn't realize that on a straight plea, the mitigated range for her defendant is going to be 10 to 12. Okay? Okay, but that. And so on a straight plea, that lawyer could go in and argue to court the sentence at the mitigated range, and that defendant has the benefit in a future federal prosecution of Simmons. No, that's where I disagree with Your Honor, and the reason is because that offense is still punishable by more than one year in prison. It's not a question of what the judge actually sentences the defendant to. The sentence, and this court resolved that in Kerr v. Carr. In Kerr, what happened was the defendant received a mitigated sentence, a sentence below one year. So I guess I need to change my hypothetical so that the presumptive range is less than one year. Either way, it matters not what the defendant actually received. What matters is what the defendant could have received. But if the presumptive range is 12 months or less, then it's not a federal felony. If the top of the maximum of the presumptive range. Well, of course. That's what I mean. The top of the maximum of the presumptive range is 12 months. Yes. All right. We've got a knucklehead lawyer who, not realizing that, has her defendant plead to a C plea that gives the same thing, a mitigated range sentence. Your Honor, the C plea makes no difference. I understand that. I'm trying to understand why it makes no difference. It makes no difference because. Apart from your argument about it's a different statute. Well, apart from that argument, the reason it doesn't matter is because it matters not what the defense and the prosecution agree is an appropriate sentence. What matters is the legislative mandate that is set forth in the statute that establishes the statutory maximum. That statutory maximum is in the statute. Nothing a defendant or a prosecutor can do can change the top of that range. And with respect to the presumptive range, just as a correction, it's the aggravated range that really, the top of the aggravated range for each. Anyway, it would depend on how it was charged and what's in the statute. And that is the government's position in this case. It is not dependent. That is the statutory maximum does not depend on a prosecutor or a defendant coming together to change that. It couldn't. And that was what the Supreme Court and the. When you say the statutory maximum, you mean the statutory maximum of some range. After application of the sentencing, the structured sentencing act. That's right. In other words, you don't mean a statutory maximum the way we use it in federal and federal lingo. Simmons corrected me. OK. Yes. No, I mean that with. And let me just go back to the to the basics of what this court in Koran and in Simmons said. You look at one document, the judgment. You look for three things, the class of felony, the prior record level, and whether the defendant was convicted of an aggravated offense. And that is aggravated within the range. Three things only. That's all that this court needs to look at, not whether or not there is a plea agreement, not whether or not the parties have come together in any sense. Three things. Those three things, those three factors in this case established that the maximum that this defendant faced as soon as he pled guilty to a class G felony with a prior record level of one was 16 months. But in fact, he didn't. He pled not as soon as he pled guilty because as soon as she accepted the guilty plea, he couldn't get more. He then he could not. But that analysis depends on what he actually received. He pled guilty to a class G felony, and he had a prior record level of one. He pled guilty to a felony offense. But he couldn't receive a G1 sentence. No, he did receive a G1 sentence. The parties simply agreed that it would be at the bottom of the range. That's what the parties agreed to. He got a G1 sentence. Nothing in his sentence. The plea agreement doesn't say the parties agree that it's the bottom of the range. That his range is 13 months, but we agree it's the bottom of the range. When one looks at the statute, which provides for a range of 10 to 16 months for a class G, see, the parties couldn't have agreed as a matter of legislation to a sentence below 10 months. That would not have been possible because that is the mandatory nature of the Structured Sentencing Act. The parties couldn't have gone lower than that. So what you do is when one looks at the statute itself, which says 10 to 16 months, and then the parties say, we think an appropriate sentence is 10 to 12 months. What the Plea Procedure Act does is it restricts the judge to also sentencing within the bottom part of that range. But it doesn't change the range itself of a class G prior record level 1 felony offense under North Carolina law. That range remains the same, and the top of that range is 16 months, which is why the offense is punishable by more than one year in prison. Ms. Wright, maybe you can address the related argument that this gentleman wasn't on notice, you know, that he didn't have the procedural safeguards of being on notice, that this crime was going to be counted as a felony of more than one year since he only actually received a sentence of less than one year. The response to that, Your Honor, is that, and Kerr sort of responds to that, he was on notice the minute he was charged and pled guilty to a class G felony prior record level 1, that it was a felony offense under federal law. You're on notice of that because you're pleading guilty to an offense within that range, that category of offense. So it is not the sentence that a defendant receives that establishes whether or not it's a felony. So in that way, you distinguish it from Simmons and, well, from Simmons, yes, from Simmons. In other words, what the range was there. That's right. It's the two ranges that matters, not what the defendant actually receives. And this court has held that several times since Simmons, not just in Kerr, but in other cases where the defendant argued, hey, I only got, you know, 10 months, 11 months, 12 months, as long as the range allows a sentence of higher than that. And that is the statutory range set forth in the North Carolina Structured Sentencing Act. When you say range, are you talking about the presumptive or the aggravated range? Because in Simmons, we said that the aggravated range would not apply in his circumstance. Right. And so it depends on what the judge finds. That's why we look to the face of the judgment. If the judge says I'm sentencing within the presumptive range or the mitigated range, we look to the top of the presumptive range. If the judge actually finds the aggravating factors, which have to be charged and found beyond a reasonable doubt consistent or admitted consistent with Apprendi, then we look to the top of the aggravated range. I guess that would require a fairly nuanced review of a defendant's record to actually put them on notice, but that doesn't matter. I don't think, Your Honor, in fairness, it may be on notice if the question is between aggravated and presumptive. Right. But even then, no, because the charge itself has to charge aggravating factors. So the defendant would know at charging whether or not the defendant was exposed to a sentence of greater than a year at the moment of the indictment. So that document itself would put the defendant on notice as to what range he or she falls into. In Simmons and in Karatori, the courts made something of the fact that we always begin with, I wanted to get the exact language and I'm not finding it, but it seemed to me that it was the best point that the other side had here, begin with the sentence you actually received. I think read in completion, pardon me, this court's decision in Simmons makes clear that that may be the beginning point, but it's certainly not the end point. And there's nothing in Simmons, and, in fact, this court has held definitively post-Simmons, that the sentence that the defendant received is not determinative. Because a defendant can receive a sentence below one year in prison and still be convicted of a felony offense for purposes of federal law. And this court has made that quite clear. And Kerr was one of those decisions. So it is true that the court in Simmons talked about conviction. The court talked about what the defendant received. But at the end of the day, this court's decision in Simmons, dependent on its holding that the Structured Sentencing Act creates a legislative mandate beyond which a judge may not go, but it establishes 12 different offenses for each class of felony. This defendant was a class G prior record level one, and under this court's decision in Simmons, that qualifies as a felony under federal law. No matter what the parties agreed to, no matter that the judge agreed to sentence in the bottom of the range, that range itself topped out above a year. If your honors have no further questions, we would respectfully request that the court affirm the judgment of the district court in this case in the defendant's sentence. Thank you very much. Thank you. Contestant, do you have a vote? I disagree with the government's statement that the maximum for the mitigated range is 13 months. I don't have the statute before me, but I believe the mitigated range, the minimum is 8 to 10 months, which makes the maximum 12 months. In this case? Yes, for any G1 felony. I believe that that is the case. The statute tells us, so we don't have to be guessing with it, right? Correct. And I actually have the statute printed out, but it's got the columns all messed up, so I can't tell for sure, but I believe that's correct. The government's main argument is that nothing in the Plea Procedure Act serves as a legislative mandate, but that's just not correct because the Plea Procedure specifically limits the court to a sentence that is the same as what is agreed, so that is a legislative mandate. And in Carr, the court focused on the limits of the court's discretion, and that's exactly what that statute does. It limits the court's discretion. So, again, the question is, under the language in Carr and Miller and Simmons, is what sentence did the defendant face, what did he actually face upon his conviction? And this defendant never actually faced more than 12 months' imprisonment. This case is not an actually received case in terms of saying that his maximum sentence is what he actually received, even though that happens to be, the maximum sentence happens to be what he actually received because the state court's discretion was limited. So you have to contrast that with Carr, where even though he actually received a sentence in the mitigated range, the court still had the discretion to go up to the presumptive range. That is the possibility that was cut off here by the plea agreement between the prosecution and the defense. You told us on page 2 of your brief that the maximum sentence was 16 months. For a presumptive range. For the presumptive range, but not for the mitigated range. And what happens when— Did you make an argument about that in your brief? Yes. And you talked about the mitigated range? Yes, and I can't remember if it's in— I think it's in the last part of the opening brief, but it could be in the reply brief. I'm not 100% sure about that. But I did make that argument in the brief. And what happens when the court goes through the first page of the judgment, it asks for the court to say whether it's in the presumptive or mitigated range. And this procedure, by agreeing to a sentence that's at the top of the mitigated range but also happens to be at the bottom of the presumptive range, that permits the court to not have to make those findings in mitigation because he's entering the sentence according to the sentence that's agreed between the parties. As far as the government's argument about the prosecutors and defendants should not be able to agree to statutory maximums, prosecutors and defendants do this all the time in state court with charge bargaining and with bargaining about aggravated factors. So the policy really is not any different between agreeing to a maximum sentence under a plea agreement. The result is basically the same. Prosecutors and defendants have that power and they do it all the time. Well, I don't know of any law that says that prosecutors and defense lawyers can change a statute. No, but they alter the maximum sentence that the defendant faces upon his conviction by bargaining as to charges and to aggravating factors. But the crime itself remains the same. They can't eliminate the crime. In other words, you could have gotten a similar result, as I say, by persuading the prosecutor to charge him with a different crime. But that didn't happen. He was charged with this crime and pled to this crime. That's true, but he pled under a plea agreement that permitted him to get a mitigated sentence. But that doesn't put him in precisely the same situation as somebody who was convicted under a lesser crime. No, but it is similar because of the way that North Carolina categorizes maximum sentences. Here we have a prosecutor who, for whatever reason, we'll never know, this guy had four separate sales of heroin on four separate days. So if the prosecutor thought he was public enemy number one, the prosecutor could have thrown the book at him. Yes. Am I correct about that? Yes. I mean, is there any reason in law that he couldn't have gotten consecutive sentences for each of these sales? No, that's just the prosecutor's choice. I mean, if the prosecutor got up one morning on the wrong side of the bed, that could happen, right? Yes. But this prosecutor apparently, for, again, whatever reason, thought this guy was not a public danger at all. Well, and I think that gets back to the point in Simmons about... Your federalism point. Federalism, deferring to the state prosecutor's decision about which convictions are deserving of punishment greater than 12 months in prison. Thank you very much. Thank you. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, Albert Diaz, Andre M. Davis